**Carl Ray ROBINSON, M.D., Plaintiff,**

**v.**

**Jack E. WORTHINGTON, Etc.; et al., Defendants.**

**Civ. A. No. 77–487–N.**

United States District Court, M. D. Alabama, N. D.

March 1, 1982.

On Motion for Withdrawal of Notice of Dismissal March 22, 1982.

E. Ray Large, Birmingham, Ala., Alvin T. Prestwood, Claude P. Rosser, Jr., Montgomery, Ala., for plaintiff.

William J. Baxley, Atty. Gen., Jack M. Curtis, Asst. Atty. Gen., Montgomery, Ala., and Herman H. Hamilton, Montgomery, Ala., for Jack E. Worthington, Robert D. Holzworth, Robert R. Crumpler, George C. Wallace, Medical Services Admin.

Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., for Joseph A. Califano, Jr.

## OPINION

VARNER, Chief Judge.

This cause is before the Court on a motion to dismiss and a motion for a nunc pro tunc order filed herein, respectively, on February 18 and 24, 1982, and on a "motion" to dismiss filed herein January 26, 1978.

FACTS.* Dr. Carl Ray Robinson filed this action on September 26, 1977. Robinson alleged in a two-count complaint that various Alabama governmental and health officials—all named as Defendants—had unlawfully terminated his status as a Medicaid provider. In those two counts, he asked the Court to declare the termination unlawful on due process grounds, and he further sought injunctive relief. With leave of Court, Robinson amended his complaint by adding Counts III and IV in which he sought to recover payments for work he had performed as a Medicaid provider. After the Defendants answered and moved for summary judgment, Robinson filed a "Notice of Dismissal Under Rule 41" which purported to voluntarily dismiss Counts III and IV without prejudice. See, Federal Rule of Civil Procedure 41(a). This Court

---

* This statement of facts is substantially taken from the Court of Appeals' Opinion in *Robin-son v. Worthington*, 667 F.2d 94 (5th Cir. 1981).

subsequently granted Defendants' motion for summary judgment and entered a judgment in Defendants' favor.

Thereafter, Robinson filed a second action (Robinson II) against basically the same group of Alabama officials sued in the instant case (Robinson I). The Robinson II complaint sought recovery of money damages on the theories that Robinson's termination as an Alabama Medicaid provider violated federal and State antitrust laws and his constitutional right to substantive due process. This Court, invoking the doctrine of res judicata, dismissed Robinson's second action, concluding that his claim fell within the allegations of the amended complaint in Robinson I.

On appeal of Robinson II, the Court of Appeals held that the "voluntary dismissal" which sought to dismiss Counts III and IV of Robinson I was ineffectual because, under Rule 41(a) of the Federal Rules of Civil Procedure, a voluntary dismissal is proper only prior to the time an answer or motion for summary judgment is made.[1] *Robinson v. Worthington*, 667 F.2d 94 (5th Cir., 1981). According to the Court's reasoning, Counts III and IV were fully viable at the time of this Court's entry of summary judgment in favor of the Defendants. The Court further explained that, given the viability of Counts III and IV, this Court's entry of summary judgment only adjudicated Plaintiff's rights under Counts I and II. Following Rule 54(b), the Court held that the summary judgment decision adjudicated fewer than all the claims and that, therefore, the judgment in that case was not final so as to bar Robinson II on res judicata grounds. The Court, accordingly, reversed this Court's decision in Robinson II

which granted summary judgment on the basis of the res judicata doctrine.

Following the Court's reversal in Robinson II, Defendants now seek to correct the record in Robinson I. Specifically, Defendants ask that the Court enter an order nunc pro tunc approving the dismissal of Counts III and IV. Defendants further request that the entire complaint, including Counts III and IV, be dismissed on another ground—that being the failure of Plaintiff to prosecute the instant case.

MOTION FOR A NUNC PRO TUNC ORDER AND PLAINTIFF'S PENDING JANUARY 26, 1978, MOTION TO DISMISS OR FOR LEAVE TO AMEND: Under Rule 60(a) of the Federal Rules of Civil Procedure, "errors * * * [in judgments, orders or other parts of the record] arising from oversight or omission may be corrected by the Court *at any time* of its own initiative or on the motion of any party * * * " [emphasis added]. As explained above, the purported voluntary dismissal was filed as a "notice" of dismissal.[2] Clearly, had this "notice" been filed as a motion—as would be proper under Rule 41(a)(2) or Rule 15(a)—this Court would have, at the time of the filing of the notice, or shortly thereafter, exercised its discretion to formally allow such a dismissal or amendment. *Diamond v. United States*, 267 F.2d 23, 25 (5th Cir. 1959); Wright & Miller, Federal Practice and Procedure: Civil, § 2364, at p. 160.

On February 22, 1982, a status conference was held, at which time "the views and claims of the defendant[s]" were asserted. *Diamond*, supra, at 25. Defendants asserted that it was their intention in March,

---

1. The Court of Appeals was, apparently, under the misconception that an answer or motion for summary judgment as to Counts III and IV had been filed. This Court was and is of the opinion that the notice of dismissal of said counts terminated their viability. Contra, *Exxon Corp. v. Maryland Casualty Co.*, 599 F.2d 659 (5th Cir. 1979). Nonetheless, this Court is bound by the appellate finding.

2. This Court now construes that notice of dismissal as a motion to dismiss or, in the alternative, a motion for leave to amend and amend-

ment. See, *Johnston v. Cartwright*, 355 F.2d 32, 39 (8th Cir. 1966); 5 Moore's Federal Practice, ¶ 41.06–1 (2nd Ed. 1981). Hereafter, the January 26, 1981, filing will be alternatively referred to as a "motion". These alternative constructions of the notice are intended to render insignificant any problems resulting from decisions disapproving of Rule 41(a) dismissals of less than all the claims in an action. As explained in *Johnston*, "it may not be material whether the Court acts under Rule 15(a) which relates to amendments * * *, or Rule 41(a)(2)."

1978—and is their intention now—not to oppose the dismissal of Counts III and IV. This assertion by Defendants is important inasmuch as the purpose of Rule 41(a)(2), and perhaps of Rule 15(a), "is primarily to prevent voluntary dismissals [or amendments] which unfairly affect the other side * * *." Wright & Miller, Federal Practice and Procedure: Civil, § 2364, at p. 165. See, *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976); 5 MOORE'S FEDERAL PRACTICE, ¶ 41.06–1 (2nd Ed. 1981) [discretion under Rule 15(a) analogous to that in Rule 41(a)(2) ]. That Defendants did not ever intend to oppose the dismissal of Counts III and IV readily appears from the fact that, in the nearly two years following the purported dismissal, Defendants never once urged this Court to disapprove of Plaintiff's dismissal. Furthermore, if the dismissal would have, in January, 1978, affected or, at present, would affect Defendants adversely, Defendants certainly would inform this Court of that fact.

■ The failure of this Court to properly construe the notice of dismissal as a motion and the resulting omission from the record of an order of dismissal or of an order effectuating the amendment is, in the opinion of this Court, an error in "the record * * arising from oversight or omission" which may be corrected by the Court. See, Federal Rule of Civil Procedure 60(a). The Court will, therefore, grant Defendants' pending motion for a nunc pro tunc order. As a result of Defendants' motion for a nunc pro tunc order, the order granting Plaintiff's January 26, 1978, "motion" is deemed by this Court to be effective as of March 13, 1978, the date of this Court's entry of summary judgment.

In addition, given the pending nature of the January 26, 1978, "motion", this Court will also now proceed to grant the "motion" and order Counts III and IV dismissed or deleted. Since this ruling is also made on Plaintiff's pending January 26, 1978, mo-

tion, this Court also deems the order granting Plaintiff's pending "motion" to be effective as of the date of the order dismissing or deleting Counts III and IV of the instant case.[3]

■ MOTION TO DISMISS FOR FAILURE TO PROSECUTE. Defendants have also filed a motion to dismiss the complaint for failure to prosecute. As stated earlier, the effect of the Court of Appeals' decision in Robinson II was to demonstrate that the failure to effectively dismiss Counts III and IV resulted in there being no final judgment in Robinson I. Therefore, it appears to this Court that the complaint in Robinson I remained and still remains viable. See, Federal Rule of Civil Procedure 54(b). The Robinson I action (this action) has never been terminated. In the interim between the purported dismissal of the action, or this Court's summary judgment order, and the institution of Robinson II, nearly two years passed. During that period, absolutely no attempt was made to point out to this Court the lack of a final judgment and the pendency of the action. Plaintiff did, however, dismiss his appeal in December, 1978. All of these circumstances clearly indicate that Plaintiff did not intend to further prosecute this cause. He should not be allowed two bites at the apple.

■ Several factors may be considered by the Court in determining the appropriateness of dismissing a case for failure of a plaintiff to prosecute an action. First, the Court may consider whether the plaintiff failed to obey "the rules". Wright & Miller, Federal Practice and Procedure: Civil, § 2370, at p. 207. Undoubtedly, the lack of activity in this case resulted from Plaintiff's failure to file a motion required by Rule 41(a) and Rule 15(a). See, generally, *Diamond v. United States*, supra. Moreover, any failure to properly dismiss Counts III and IV must be laid at the feet of Plaintiff who failed to see that those counts were properly dismissed or deleted as obvi-

3. It should be realized that this decision is based on two grounds: First, the authority granted by Rule 60(a) to correct errors in the record, and second, a ruling on the pending

nature of the January 26, 1978, "motion", whether made under Rule 41(a)(2) or Rule 15(a).

ously was intended by the filing of the "notice" of dismissal. Such a failure to properly see that Plaintiff's wishes, to dismiss or delete Counts III and IV, were secured under the provisions of the federal rules constitutes, in this Court's opinion, a failure to follow "the rules".

A second factor to be considered here is whether Plaintiff has an excuse for the delay in prosecuting the action. Wright & Miller, Federal Practice and Procedure: Civil, § 2370, at p. 207. As a result of Plaintiff's failure to see that Counts III and IV were properly dismissed or deleted, the present action remained viable. Since Plaintiff must be charged with the consequences of his own actions and since it was Plaintiff's responsibility to continue to pursue viable claims in the complaint, it clearly appears that Plaintiff had no excuse for the delay. To say that he did have an excuse for the delay would, in the opinion of this Court, allow Plaintiff to take advantage of a misimpression created by his own conduct.

Finally, the Court may consider whether there are "other factors aggravating the inaction". Wright & Miller, Federal Practice and Procedure: Civil, § 2370, at p. 207. In the instant case, the Defendants operated for nearly two years under the assumption that no viable claims remained. Thus, Defendants were caused to forego opportunities to resolve the case at a much earlier date. Plaintiff did not pursue rights remaining under the present case; rather, he sought, two years after the summary judgment order and one year after the dismissal of the appeal in this case, to institute a second case, Robinson II. In the opinion of this Court, substantial prejudice to the rights of the Defendants would occur if this complaint is not dismissed. Everyone involved in the case, including Plaintiff, felt that this case had reached a final disposition. To the extent that it was not, it was Plaintiff's responsibility to prosecute this action to a final conclusion. Plaintiff's failure to prosecute must now result in the dismissal of the action. Here, there is a "clear record of delay" and "lesser sanctions would not serve the best interests of justice." *Boazman v. Economics Laboratory,*

537 F.2d 210 (5th Cir. 1976); *Durham v. Florida East Coast Railway,* 385 F.2d 366 (5th Cir. 1967). Accordingly, Defendants' motion to dismiss for failure to prosecute will be granted. *Spering v. Texas Butadiene & Chemical Corp.,* 434 F.2d 677 (3rd Cir. 1970); *States S.S. Co. v. Phillipine Air Lines,* 426 F.2d 803 (9th Cir. 1970); *Theodoropoulos v. Thompson-Starrett Co.,* 418 F.2d 350 (2nd Cir. 1969).

MODIFICATION OF ENTRY OF SUMMARY JUDGMENT. *Allowed by Federal Rule of Civil Procedure 60(a).* As explained earlier, this Court's failure to dispose of Plaintiff's January 26, 1978, "motion" for dismissal of, or for amendment deleting, Counts III and IV was an error in the record which resulted from oversight or omission. Under the authority given this Court by Rule 60(a), the Court has indicated above that it will grant Defendants' motion for a nunc pro tunc order and that it will dismiss or delete Counts III and IV in accordance with Plaintiff's January 26, 1978, "motion" to dismiss or "to amend". The Court, under the authority granted by Rule 60(a), has deemed the dismissal or deletion of these counts to be effective as of March 13, 1978, the time of this Court's entry of summary judgment.

██ ██ This oversight resulting in the absence from the record of an order dismissing or deleting Counts III and IV also requires the Court to correct the March 13, 1978, entry of summary judgment. Authority for correction of the judgment effective March 13, 1978, is conferred by Rule 60(a). Errors in judgments resulting from oversight may be corrected. Therefore, the March 13, 1978, Opinion and Order granting summary judgment will be amended so as to specifically dismiss or delete Counts III and IV of Plaintiff's complaint in this case. The correction of the judgment is effective as of March 13, 1978.

██ *Allowed by the Interlocutory Nature of the Summary Judgment Order.* In addition to the authority to correct errors in judgments which result from oversight or omission, a court also has the authority to

modify or rescind an interlocutory order. *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir. 1970). See, also, *John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 88, 42 S.Ct. 196, 198, 66 L.Ed. 475 (1922). Since the Court of Appeals has held that no final judgment was entered in this case, the March 13, 1978, summary judgment was merely an interlocutory order.

This Court, as stated above, has now ruled on Plaintiff's pending January 26, 1978, "motion" for dismissal of, or for amendment deleting, Counts III and IV. Accordingly, under the authority cited above, the Court may now modify the March 13, 1978, "interlocutory" summary judgment order. This modification of the March 13, 1978, order will be effective upon the entry of the order modifying the summary judgment order so as to dismiss or delete Counts III and IV of the amended complaint.

CONCLUSION. The result of this Opinion may be summarized as follows:

1. A Nunc Pro Tunc Order will issue granting Plaintiff's January 26, 1978, "motion" to dismiss or "to amend". The granting of the motion will, under the authority of Rule 60(a), be effective as of March 13, 1978, the date of the original entry of summary judgment.

2. A Nunc Pro Tunc Order will issue under Rule 60(a) correcting the March 13, 1978, summary judgment Opinion and Order to reflect that Counts III and IV of Plaintiff's complaint were dismissed or deleted as of March 13, 1978.

3. An Order will issue granting and approving Plaintiff's pending January 26, 1978, "motion" to dismiss or, in the alternative, motion for leave to amend and amendment.

4. or deletion

5. See, generally, *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 194 (5th Cir. 1980) [Flexibility exists in Federal Rule of Civil Procedure 54(b) so "that justice, and the economic termination of litigation may not suffer from an overly strict adherence to formalism." According to the Fifth Circuit, "practical, not technical, consid-

4. An order will issue modifying the March 13, 1978, summary judgment order so as to reflect the dismissal[4] of Counts III and IV of Plaintiff's complaint. That order will be effective as of the date of its issuance.

5. An order will issue under Rule 41(b) dismissing, with prejudice, Plaintiff's complaint. That order will issue on the ground that Plaintiff has failed to prosecute this action.

There is no question that all parties contemplated that the March 13, 1978, Judgment terminated this case. The above-described orders will correct whatever defects exist in the record. The result of these orders will be the final termination of the case.[5] To allow any other result would, in the opinion of this Court, be entirely unjustified. This result clearly comports with the intention of all parties and of the Court as of March 13, 1978. See, Fed.R. of Civ. Pro. 1.

### ON MOTION FOR WITHDRAWAL OF NOTICE OF DISMISSAL

This cause is before the Court on Plaintiff's motion filed herein February 22, 1982, for withdrawal of notice of dismissal or motion for leave to withdraw notice of dismissal.

### FACTS

For a full explication of the facts of this case, refer to this Court's Opinion filed herein March 1, 1982. Suffice it to say that the sole issue before this Court is whether this Court has a discretion to deny Plaintiff leave to withdraw his "notice" of dismissal (construed by this Court to be a motion for leave to amend and amendment) which has been pending in this Court since January 26, 1978.[1] This Court is of the opinion that

erations are to govern the application of principles of finality."]

1. A reading of this Court's March 1, 1982, Opinion in this case should make it apparent that a ruling on Plaintiff's present motion to withdraw should have preceded this Court's ruling on the pending January 26, 1978, motion. While this Court has implicitly ruled on the

in 1978 Plaintiff intended to submit on cross motions for summary judgment every issue relative to this case and that the parties should not, because of a clerical error, be required to relitigate the issue of liability which the Court determined in 1978.

### LAW

*Federal Rules.* A review of the Federal Rules of Civil Procedure reveals that those rules do not address a party's ability to withdraw a motion once it is filed with the Court. The total absence of guidance on this matter by the Federal Rules requires this Court to resort to other sources for direction.

*State Law.* The law of some States indicates that a party's right to withdraw a motion is not absolute. At least three separate cases from lower courts in the State of New York indicate that a party's right to withdraw is adversely affected once the motion has been "submitted" for decision. *Wallace v. Ford*, 253 N.Y.S.2d 608, 44 Misc.2d 313 (1964); *Heaberkorn v. Macrae*, 233 N.Y.S.2d 793, 36 Misc.2d 1072 (1962); *Leader v. Leader*, 166 N.Y.S.2d 784, 8 Misc.2d 1015 (1948). In addition, some courts have indicated that it may be necessary for a party to obtain "leave of court" before he can withdraw a motion. *Kjellander v. Kjellander*, 139 P. 1013, 92 Kan. 42 (1914); *Jensen v. Barbour*, 31 P. 592, 12 Mont. 566 (1892).

*Amendment of Motions.* Although there is a paucity of law relating to withdrawal of motions, there has been slightly more extensive consideration of a party's right to amend a motion filed with a court. 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil, § 1194 (1969) [hereinafter cited as Wright & Miller]. To a certain extent, a motion to withdraw a prior motion is somewhat akin to an amendment of the motion by deletion. Accordingly, the principles which relate to amendment of motions should be helpful in dealing with this question of the withdrawal of a motion.

It appears that a motion is subject to "timely" amendment. Wright & Miller, *supra.* Wright & Miller go on to state further principles which should be helpful in considering this question.

"[A]s long as the ability to amend a motion is left to the discretion of the trial judge, his ability to deny leave to amend when he believes the amendment process is being abused provides a sufficient safety valve. Thus although there may be valid policy reasons for not granting the movant an absolute or automatic right to amend his motion, there is no reason to deny amendment when the trial judge believes it would be in the interests of justice to permit it.

"The use of discretion seems especially appropriate if the adverse parties *will not be prejudiced* by the amendment, or if the amendment is *necessary* to *insure* that the *case is adjudicated fairly and justly,* or if it will help *resolve the litigation* at an *early date.*

"In theory, a motion may be amended at any time before the judge has acted upon the motion, although it is particularly inappropriate *after briefs have been interposed by the opposing parties,* or oral arguments have been heard, or *other forms of reliance have been built up* on the basis of the original motion." Wright & Miller, supra, [emphasis added].

It appears from the foregoing that the allowance of amendments to motions is substantially left to the discretion of the courts. The question of the exercise of the Court's discretion was dealt with somewhat in the preceding quotation. However, further delineation of the sort of factors which might affect the exercise of that discretion appears desirable. Concepts which courts have outlined to govern the exercise of such discretion under Federal Rule of Civil Procedure 15(a) should be persuasive in this context.

The United States Supreme Court has enunciated a general standard to be used by district courts in deciding whether

withdrawal question in the March 1, 1982, Opinion, this Opinion sets out the Court's rea-

sons for denying Plaintiff's motion to withdraw.

to allow amendments of pleadings. That standard is an appropriate one for this Court to utilize in deciding whether to allow Plaintiff to withdraw his motion.

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as *undue delay*, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, *undue prejudice to the opposing party by virtue of allowance of the amendment*, futility of amendment, etc. —the leave sought should, as the rules require, be 'freely given'." *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) [emphasis added].

### APPLICATION OF LAW

Now that various elements have been outlined which could govern this Court's decision on Plaintiff's motion to withdraw or motion for leave to withdraw, these elements must be applied to the facts of this case. As explained above, two factors may affect a court's decision on such matters: (1) whether the motion has been "submitted"; and (2) the court's discretion in the matter.

■ It would appear to this Court that, under any reasonable definition of the word "submitted", the present motion has been submitted for decision. First, the "motion", filed January 26, 1978, has been pending for four years, and Plaintiff has not taken any earlier action that would indicate that he intended to withdraw the motion. Plaintiff clearly had plenty of time to file any additional briefs, etc., in support of the motion. In any event, such motions are often decided without benefit of briefs. In addition, Defendants filed on February 18, 1982, (prior to the filing of Plaintiff's present motion) a motion to dismiss based, at least in

part, on the pending nature of the January 26, 1978, filing. Such a filing should be considered analogous to the situation where responses to a motion have been filed. Under the analysis provided in Wright & Miller, amendment of a motion is "particularly inappropriate after briefs have been interposed by the opposing parties." It would appear, therefore, that such responsive filings, whether or not they provide the dividing line for the submission of a motion, are clearly relevant in determining the right of the Plaintiff to withdraw his motion. In the opinion of this Court, the aforedescribed factors tend to indicate that Plaintiff's motion has been "submitted" for decision and that, accordingly, Plaintiff has no absolute right to withdraw the "motion". See, *Heaberkorn v. Macrae*, 233 N.Y.S.2d 793, 36 Misc.2d 1072 (1962).

Since it has been decided that the motion has been submitted, the decision concerning the withdrawal is in the discretion of the Court.[2] As mentioned before, it appears that this Court is suffused with considerable discretion in determining whether Plaintiff should be granted leave to withdraw the January 26, 1978, "motion". At this point, application of the various factors discussed above which affect the exercise of that discretion is appropriate.

■ Wright & Miller indicate that a motion is subject to "timely" amendment. By analogy to the process of amending motions, it certainly cannot be argued that this motion to withdraw the pending motion was timely. The motion was filed over four years ago. Furthermore, under the above-quoted *Foman* standard promulgated by the Supreme Court in connection with a court's exercise of discretion in allowing amendments of pleadings, it is clear that "undue delay" in asking for an amendment is a factor to be considered in whether a court should grant leave to amend. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d

2. This Court merely addresses the question of submission to show that the motion here was submitted. This Court does not decide whether "submission" in the legal sense of the word is a prerequisite to this Court's invoking of its discretion to decide whether withdrawal should be allowed.

222 (1962). Such undue delay should also be considered in the present context. A delay of four years in attempting to withdraw the motion cannot be characterized as being anything other than undue delay.

Prejudice to the moving party is a second factor to consider. In the context of this case,[3] when all parties unquestionably proceeded for four years on the assumption that Counts III and IV of the complaint were deleted and when Plaintiff dismissed his appeal of this case in December, 1978, and, thus, further demonstrated his belief in the fact that those counts were no longer viable, it clearly would be prejudicial to Defendants to allow these counts to remain effective. Defendants were clearly duped into believing that there had been a final disposition of the case. Defendants, therefore, have foregone opportunities to finally resolve this matter at a much earlier date. The undue prejudice that would result to Defendants counsels that the motion should not now be withdrawn.

Although prejudice to the adverse parties is thought by Wright & Miller to be a separate factor to consider in exercising discretion, it appears to this Court that, in this case, such prejudice plays a key role in determining the applicability of two other factors adverted to by Wright & Miller: (1) whether the amendment is necessary to insure that the case is adjudicated fairly and justly; and (2) whether the amendment is appropriate if "forms of reliance" have been built up on the motion. For the reason set out above with regard to resulting prejudice to adverse parties, it appears to this Court that, to allow the withdrawal of the motion, would secure an unfair and unjust adjudication and, further, would also ignore the reliance Defendants placed on Plaintiff's nonpursuit of Counts III and IV.

A final factor considered by Wright & Miller to be appropriate in exercising discretion in allowing amendments to motions is whether the amendment of the motion will help resolve the litigation at an early date. Should Plaintiff be allowed to withdraw this "motion", this litigation would continue. This litigation was thought by all parties to have been concluded in 1978; therefore, to allow the motion to be withdrawn would succeed in delaying the resolution of this litigation by four years. Since withdrawal of the motion will delay the resolution of the case, Plaintiff should not be allowed to withdraw the motion.

Considering all of the factors set out above, it is this Court's opinion that Plaintiff should not be granted leave to withdraw and, further, that Plaintiff's motion filed herein February 22, 1982, should be denied.[4]

An Order will be entered in accordance with this Opinion.

---

3. See March 2, 1982, Opinion in this case.

4. Plaintiff has not raised the theory of "abandonment" as an additional reason why the January 26, 1978, motion should not be considered. Under such a theory, if the movant proceeds in a manner inconsistent with the object of the motion, it is waived. *Kemper v. Doyal*, La. App., 212 So.2d 166 (1968); *Bridgers v. South Carolina State Highway Department*, 197 S.C. 125, 14 S.E.2d 632, 633 (1941). However, here all of Plaintiff's actions prior to the motion to withdraw and the filing of Robinson II (see 3/2/82 Opinion of this Court) have been consistent with the object of the motion, that being the deletion of Counts III and IV. In addition, according to *Kemper*, even if the movant has proceeded in a manner inconsistent with the motion, the "circumstances and equities" may be considered by the Court. Here, the circumstances and equities favor the Defendants, and Plaintiff's motion, therefore, will not be considered abandoned.